**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9  REGENTS OF THE UNIVERSITY OF CALIFORNIA          No. C 04-03756 MHP ARB
   ON BEHALF OF HOSPITALS AUXILIARY OF THE
10 MEDICAL CENTER AT THE UNIVERSITY OF
   CALIFORNIA, SAN FRANCISCO,

11
                   Plaintiff,                      **MEMORANDUM & ORDER**
12                                                 **Re: Motion for Summary**
           v.                                      **Judgment**
13

14 PRINCIPAL FINANCIAL GROUP et al.,
                   Defendants.
15

16

17

18        On September 7, 2004, defendants Principal Financial Group et al. filed a notice of removal

19 in this court, removing this action from San Francisco Superior Court.  The original complaint, filed

20 by plaintiff Regents of the University of California, states six claims for relief arising out of

21 defendants' refusal to pay for medical treatment provided by plaintiff to one of defendants' insureds.

   Now before this court is defendants' motion for summary judgment on each of plaintiff's claims.
22
   Having considered the parties' arguments and submissions, the court enters the following
23
   memorandum and order.
24

25

26

27

28
                                                   1

**United States District Court**

For the Northern District of California

BACKGROUND[1]

In late June, 2003, Mr. David Donner, who was insured under a medical policy issued by defendants, was injured in an automobile accident.  Mr. Donner was later convicted of driving while intoxicated at the time of the accident.  Following initial medical treatment at another hospital, Mr. Donner was transferred to the University of California San Francisco ("UCSF") hospital, which is owned by plaintiff, on July 5, 2003.  Mr. Donner spent sixteen days at the UCSF hospital, incurring medical expenses in excess of $150,000.

Prior to admitting Mr. Donner, UCSF contacted defendants to confirm that Mr. Donner was covered under a valid policy with defendants, and to obtain authorization to treat Mr. Donner.  Defendants confirmed orally that Mr. Donner was covered and then authorized in writing an initial hospital stay of two days.  Through a series of five additional communications addressed to both Mr. Donner and UCSF, defendants authorized the remaining fourteen days of Mr. Donner's stay.  Each of the authorization letters contained the following disclaimer:

> This letter is not a guarantee of payment.  The actual amount of benefits, if any, is subject to all plan provisions in effect when services are given.  This includes the patient's eligibility and any plan limitations or exclusions.  Please refer to your plan booklet for more information.

Declaration of Sherry in Support of Defendants' Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment ("Ferry Dec."), Exh. D.  Defendants claim that the oral confirmation included the same disclaimer.  Id. ¶¶ 3–6.

Pertinent to the case at bar, Mr. Donner's policy with defendants contains an exclusion for charges resulting from "voluntary participation in criminal activities," which encompasses criminal drunk driving.  Declaration of Donna Phillips in Support of Defendants' Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment  ("Phillips Dec."), Exh. A.  During the authorization process, defendants did not provide UCSF with information about the criminal activities exclusion or any other specific exclusion, or attempt to obtain further information about the cause of the injuries giving rise to the need for treatment.  Nor did UCSF ask defendants

2

1 about what policy exclusions might apply or volunteer information to defendants about the cause of

2 the injuries.

3      Defendants subsequently learned that Mr. Donner had been injured as a result of his criminal

4 drunk driving.  After UCSF submitted claims for payment of Mr. Donner's bills to defendants,

5 defendants notified UCSF that payment of the claims was "pending for third-party liability."

6 Beginning on October 2, 2003, defendants sent explanation of benefits letters to UCSF and Mr.

7 Donner, stating that "[c]harges are not covered.  Your plan indicates no benefits will be paid for

8 charges due to voluntary participation in criminal activities."  Defendants have continued to refuse

9 payment on UCSF's claims.

10      Plaintiff's complaint alleges that defendants' refusal to pay for the services rendered to Mr.

11 Donner is unlawful under six separate legal theories:  breach of express contract, breach of implied

12 contract, negligent misrepresentation, estoppel, *quantum meruit*, and violation of California Health

13 and Safety Code section 1371.8.  Defendants move for summary judgment on each of plaintiff's

14 claims.

15

16 LEGAL STANDARD

17      Summary judgment is proper when the pleadings, discovery and affidavits show that there is

18 "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

19 of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.

20 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

21 genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

22 party.  Id.  The party moving for summary judgment bears the burden of identifying those portions of

23 the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material

24 fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party

25 will have the burden of proof at trial, the moving party need only point out "that there is an absence

26 of evidence to support the nonmoving party's case."  Id.

27

28                                  3

**United States District Court**

For the Northern District of California

**United States District Court**

For the Northern District of California

1   Once the moving party meets its initial burden, the nonmoving party must go beyond the

2   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

3   genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving

4   party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.

5   1994). The court may not make credibility determinations, and inferences to be drawn from the facts

6   must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker

7   Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

8   The moving party may "move with or without supporting affidavits for a summary judgment

9   in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing

10   affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

11   evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated

12   therein." Fed. R. Civ. P. 56(e).

13

14   DISCUSSION

15   I.      Breach of Express Contract

16   Plaintiff has provided evidence of two sets of communications that may have resulted in an

17   express contract. First, plaintiff makes note of the series of written authorization letters, each of

18   which contained the disclaimer. Second, plaintiff has provided evidence of at least one phone

19   conversation with defendants. The court will consider each set of communications in turn.

20

21   A.      Written Communications

22   The parties disagree as to whether the written communications between plaintiff and

23   defendants resulted in a binding agreement. The disagreement stems from differing views as to the

24   significance of the disclaimers in defendants' verifications and authorizations. Defendants argue that

25   the disclaimers show that defendants lacked the required intent to be bound; thus, the verification

26   and authorization letters did not result in the formation of a contract. Plaintiff argues that the letters

27

28                                                      4

1   resulted in a binding contract subject to a "reservation to terminate," but argue that reservations to

2   terminate may not be exercised once the other party has performed.

3         The court disagrees with both parties' characterizations of the effect of the disclaimers.

4   California law requires four elements to form a valid contract:  1) parties capable of contracting;

5   2) their mutual consent; 3) a lawful object; and 4) sufficient consideration.  Cal. Civ. Code §§ 1550,

6   1565.  Consent need not be unconditional; parties may condition performance on the occurrence of

7   future events.  See generally 1 Witkin Summary of California Law, ch. 1, § 736 (9th ed. 1990)

8   [hereinafter Witkin].  Here, the disclaimer states that payment of benefits "is subject to all plan

9   provisions in effect when services are given."  This disclaimer does not demonstrate a general intent

10  not to be bound; nor does it reserve a blanket right to terminate.  Rather, it indicates that payment is

11  conditioned on meeting the terms of the policy.

12        Defendants cite Cedars Sinai Medical Center v. Mid-West National Life Insurance Co., 118

13  F. Supp. 2d 1002 (C.D. Cal. 2000), in support of their argument that the authorization letters do not

14  manifest an intent to be bound.  In Cedars Sinai, a patient who fraudulently obtained health insurance

15  was admitted to Cedars Sinai Medical Center for treatment.  Id. at 1005–06.  Cedars Sinai contacted

16  the insurer, who verified that the patient had a valid policy and that the premiums were up to date.

17  Id. at 1006.  When the hospital submitted the bill to the insurer, the insurer discovered that the

18  patient had lied during the application process for the policy, rescinded the policy, and refused to pay

19  the hospital.  Id. at 1007.  The court found that the verification of coverage, without more, did not

20  establish the requisite intent to be bound.  Id. at 1008–09.

21        Two factors distinguish this case from Cedars Sinai.  First, unlike in Cedars Sinai, defendants

22  in this case provided both verification of coverage and explicit authorization for the hospital stay.

23  Second, defendants in this case provided the verification and authorization on at least six separate

24  occasions, both orally and in writing.  Drawing inferences from the factual record most favorable to

25  plaintiff, it would be reasonable to conclude based on the written authorizations that defendants

26  intended to be bound, subject to the provisions of the policy.

27

28                                                        5

**United States District Court**

For the Northern District of California

**United States District Court**

For the Northern District of California

1    Given that a reasonable jury could conclude that a conditional agreement was formed, the

2    court must consider the effect of the condition not being met.  Plaintiff does not disagree that Mr.

3    Donner's drunk driving excluded his resulting injuries from coverage under the policy.  Plaintiff

4    argues, instead, that defendants were obligated to invoke the policy exclusion before plaintiff treated

5    Mr. Donner, and that defendants may not retrospectively refuse payment for treatment that has

6    already been provided.

7    Under California law, a party may waive a condition by accepting performance by the other

8    party.  See Soisin v. Richardson, 210 Cal. App. 2d 258 (1962) (holding that a promisor can waive a

9    condition "by his words or conduct"); 1 Witkin, ch. I, § 767.  Waiver of a material condition is not

10   binding, however, absent some additional consideration.  Id.; see also Rest. 2d Contracts § 84(1) &

11   cmt. c.  Here, the underlying insurance policy expressly states that only injuries that are not the result

12   of illegal activities are covered.  The Restatement includes a very similar factual scenario as an

13   example of a material condition: "In an insurance policy the insurer promises to pay $1000 if the

14   insured is killed on a railroad.  The insurer's subsequent promise to pay $1000 even though the

15   insured is not killed on a railroad is not binding under this Section, whether the promise is made

16   before or after the death of the insured."  Id. cmt. c, illus. 1.  Thus, defendants did not become

17   obligated to pay plaintiff through their failure to prevent plaintiff from treating Mr. Donner.

18   Plaintiff cites a number of cases for the blanket proposition that a "reservation to terminate"

19   does not apply where the promisee has already completed performance.  See, e.g., Allen v. Laughlin

20   Fruit Refiners, Inc., 57 Cal. App. 46, 47 (1922) (considering the effect of a contract term making

21   performance "subject to cancellation at any time").  Cases considering unqualified reservations to

22   terminate are not applicable here, where the written disclaimers established a specific, limited

23   condition precedent.  The issue in this case is not whether, as plaintiff claims, defendants had the

24   right to cancel the contract after plaintiff had already performed.  Rather, the issue is whether the

25   conditions giving rise to defendants' obligation to pay have been met.  It is clear (and defendants

26   cannot reasonably dispute) that if Mr. Donner's injuries were covered under the terms of the policy,

27

28

6

United States District Court

For the Northern District of California

then based on the written authorization letters defendants would be obligated to pay plaintiff. Mr. Donner's injuries were in fact not covered, and the nonoccurrence of a material condition removed defendants' obligation to pay under the written terms of the authorization letters.

### B.    Oral Communications

Plaintiff has also produced evidence of at least one oral communication with defendants, in which defendants authorized treatment and informed plaintiff of Mr. Donner's deductible and reimbursement rate. Declaration of Robin Hanson ¶ 6. In response, defendants have presented documentary evidence that the oral communication also included the disclaimer. Ferry Dec. ¶¶ 3–6. Plaintiff has not presented any evidence to the contrary. The court is somewhat troubled by the failure of either party to submit declarations or deposition excerpts from the individuals actually involved in the oral authorizations. Once defendants have met their burden under Rule 56, however, plaintiff is required to produce evidence creating a triable issue of fact, or to indicate why such evidence is currently unavailable. See Rule 56(e)–(f). Plaintiff has failed to do so, and the court must grant defendants' motion with respect to plaintiff's express contract claim.

### II.    Breach of Implied Contract

Defendants argue that plaintiff's implied contract argument fails as a matter of law because the express written language of the authorization and verification letters is controlling. Defendants cite California Civil Code sections 1619–1621 in support of their argument. Section 1619 states that "[a] contract is either express or implied." Section 1620 defines an express contract as "one, the terms of which are stated in words." Section 1621 defines an implied contract as "one, the existence and terms of which are manifested by conduct." Based on this wisp of legal authority, defendants contend that there cannot be an implied contract between parties where certain terms—i.e., the disclaimer—were stated in writing.

7

**United States District Court**

For the Northern District of California

1    As an initial matter, it is not possible to reconcile defendants' argument that the implied

2  contract claim fails because the authorizations created an express contract with defendants' argument

3  that the written authorizations did not manifest an intent to be bound, and therefore did not give rise

4  to a binding contract.  The court has concluded, however, that the written authorizations resulted in

5  an express contract.  Assuming arguendo that defendants' legal theory has merit, the question

6  remains whether the alleged implied contract is truly indistinguishable from the express contract.

7    It is not possible to discern the contours of plaintiff's implied contract claim from the

8  complaint or moving papers.  Presumably, plaintiff is claiming that defendants' conduct—

9  authorizing treatment and allowing treatment to proceed without objection—manifested an unstated

10  intent to be bound.  If so, the implied contract came into being after treatment was completed and

11  after defendants failed to object, which occurred subsequent to the transmission of the authorization

12  letters.  The acts giving rise to plaintiff's implied contract claim, although they may include the

13  authorizations, are therefore at least partially distinct from the acts giving rise to the express contract.

14    In any case, ruling on the merits of plaintiff's implied contract claim appears to be premature.

15  Neither party has submitted deposition testimony or declarations from the individuals involved in

16  processing plaintiff's claim, or testimony as to the practice and custom in the health care industry,

17  which might assist the court in determining how plaintiff should reasonably have interpreted

18  defendants' conduct.  The absence of any testimony about industry practice and custom is

19  particularly troubling where the dispute underlying the litigation appears to be relatively common;

20  insurers and health care providers must argue over coverage frequently.  The court is reluctant to rule

21  on a dispositive motion without any information about the reasonable expectations of the parties, or

22  about how such disputes are usually resolved.

23    Nonetheless, the court is skeptical of plaintiff's ability to prevail on its implied contract

24  claim, in light of the written disclaimers.  Hospitals such as UCSF, like insurers, are repeat players in

25  insurance-related disputes and are likely aware of common policy exclusions.  In a motion for

26  summary judgment, however, the moving party has the burden of identifying those portions of the

27

28                                                        8

United States District Court

For the Northern District of California

1   pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

2   Celotex, 477 U.S. at 323.  Defendants, the moving parties, have failed to meet their initial burden of

3   producing evidence sufficient to establish that no implied contract was formed.  The court will

4   permit a renewed challenge to plaintiff's implied contract claim if and when the parties produce

5   sufficient evidence of industry custom to support a good faith motion for summary judgment.

6          The court therefore denies defendants' motion for summary judgment on plaintiff's implied

7   contract claim.

8

9   III.    Negligent Misrepresentation

10         Defendants argue as well that plaintiff has failed to demonstrate a triable issue on its

11  negligent misrepresentation claim.  Under California law, negligent misrepresentation has six

12  elements:

13         (1) The defendant must have made a representation as to a past or existing material
           fact, (2) which was untrue, (3) which, regardless of the defendant's actual belief, was
14         made without any reasonable grounds for believing it was true, and (4) which was
           made with the intent to induce the plaintiff to rely upon it; (5) the plaintiff justifiably
15         relied on the statement, and (6) plaintiff sustained damages.

16  Cedars Sinai, 118 F. Supp. 2d at 1010 (citing Gagne v. Bertran, 43 Cal. 2d 481, 487–88 (1954)); Cal.

17  Civ. Code §§ 1572, 1710.  Defendants claim that there is no evidence of any misrepresentation, as

18  required by the second element.  According to defendants, each communication accurately stated that

19  Mr. Donner was covered by a valid policy, and that payment of benefits under the policy depended

20  on whether any exclusions were applicable.

21         Plaintiff identifies three possible facts that defendants misrepresented.  First, plaintiff argues

22  that "[d]efendants falsely represented to UCSF that they would pay the claim."  Brief in Opposition

23  at 16.  This statement is manifestly about what defendants will do in the future.  As California law

24  requires a representation of a "past or existing material fact," this first alleged misrepresentation is

25  inadequate.

26

27

28                                                          9

**United States District Court**

For the Northern District of California

1    Second, plaintiff seems to suggest that defendants falsely represented that Mr. Donner was

2   "covered" under the policy.  In determining whether defendants' representation was false, it is

3   helpful to examine past cases upholding negligent misrepresentation claims in similar contexts.  In

4   Cedars Sinai, discussed supra, the insurer represented that the patient was "covered," but

5   subsequently discovered that the policy had been obtained by fraud.  118 F. Supp. 2d at 1006–07.

6   Upon making this discovery, the insurer rescinded the policy.  As a result of the rescission, no valid

7   policy existed at the time of the alleged misrepresentation, and the patient was not eligible for

8   coverage of any kind.  Id. at 1011.  The court stressed this point: "[the fact that there was a

9   misrepresentation] is emphasized by Mid-West's subsequent rescission of Bernheim's policy.  By

10  rescinding Bernheim's policy, Mid-West took the position that Bernheim's policy was unenforceable

11  from the outset.  Indeed, a rescinded insurance policy is viewed as never having existed. . . .Thus,

12  Mid-West's pre-certification of Bernheim's coverage was not true."  Id.  Similarly, in

13  UCSF-Stanford Health Care v. Hawaii Management Alliance Benefits & Services, Inc., 58 F. Supp.

14  2d 1162 (D. Haw. 1999), and St. Joseph's Hospital & Medical Center v. Reserve Life Insurance Co.,

15  154 Ariz. 307 (1987), the courts found that verification of coverage was false where the insurers

16  subsequently rescinded the policies.

17    Here, in contrast, Mr. Donner's policy existed and was valid at the time of the certification,

18  but a specific policy exclusion applied.  Defendants' representations during the verification and

19  authorization process accurately reflect this reality:  defendants verified that Mr. Donner was covered

20  by the policy and that he was authorized to receive treatment, subject to any policy limitations.

21    Finally, plaintiff suggests that defendants should have provided additional specific

22  information about policy exclusions that might apply.  California negligent misrepresentation law,

23  however, does not impose liability for negligent omissions; some "positive assertion" is required.

24  Compare Cal. Civ. Code § 1572(2) (imposing liability for a negligent positive assertion that is false,

25  although the speaker believes it to be true) with § 1572(3) (imposing liability for suppression of

26  material facts only where the speaker has "knowledge or belief of the fact"); see also Huber, Hunt &

27

28                                    10

1    Nichols, Inc. v. Moore, 67 Cal. App. 3d 278, 304 (1977) (doctrine of negligent misrepresentation

2    applies only to positive assertions).  Plaintiff has not identified any affirmative misrepresentation by

3    defendants with respect to the criminal activity exclusion.

4            As plaintiff has not identified any misrepresentation encompassed by California negligent

5    misrepresentation law, defendants' motion for summary judgment must be granted.

6

7    IV.    Estoppel

8            The elements of estoppel are similar to those for negligent misrepresentation, but with one

9    crucial difference.  For an estoppel to arise, there must be (1) a representation *or concealment* of

10   material facts (2) made with knowledge, actual or virtual, of the facts (3) to a party ignorant, actually

11   and permissibly, of the truth (4) with the intention, actual or virtual, that the latter act upon it; and (5)

12   the party must have been induced to act upon it.  11 Witkin, ch. XVIII, § 177 (emphasis added); Los

13   Angeles v. Babcock, 102 Cal. App. 571, 577 (1929).  Estoppel, unlike negligent misrepresentation,

14   may be based on an omission as well as an affirmative representation.

15           With respect to the first element, defendants do not dispute that they failed to alert plaintiff of

16   any specific policy exclusions that might prevent payment.  Nor do defendants argue that, had they

17   informed plaintiff of the policy exclusion for injuries resulting from illegal activity, plaintiff might

18   have refused treatment or attempted to secure another guarantee of payment.  A triable issue exists as

19   to whether defendants made a material omission.

20           With respect to the remaining elements, the parties disagree as to who was in a better position

21   to investigate whether a particular policy exclusion might apply, whether defendants intended that

22   plaintiff treat Mr. Donner, and whether plaintiff was induced by defendants' omission to treat Mr.

23   Donner.  Questions such as whether defendants "virtual[ly]" knew of the significance of the policy

24   exclusion, or whether plaintiff "permissibly" remained ignorant of the exclusion, are intensely

25   factual and generally inappropriate for resolution on a motion for summary judgment.  See

26   DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd., 30 Cal. App. 4th 54, 61–62

27

28                                                       11

*United States District Court*

For the Northern District of California

United States District Court

For the Northern District of California

1   (1994) (noting that estoppel is a question of fact, to be decided by the court); Cedars Sinai, 118 F.

2   Supp. 2d at 1012–13 (denying summary judgment because of fact issues related to inducement and

3   reliance).

4          Truck Insurance Exchange v. Industrial Accident Commission, 36 Cal. 2d 646 (1951), further

5   supports the conclusion that defendants may be estopped from denying coverage based on their

6   failure to disclose specific exclusions.  In Truck Insurance Exchange, an insurance carrier attempted

7   to cancel a policy by mailing a notice of cancellation to the insured.  Id. at 650.  The insured had a

8   consistent prior practice, however, of relying on the local insurance agent to "keep his insurance

9   coverage in order and to give him personal notice if there was any danger of cancellation of his

10  insurance policy by reason of an arrearage in premium payments."  Id. at 650–51.  Based on the prior

11  practice, the court found that the carrier was estopped from canceling the policy through the mail,

12  having failed to provide personal notice, despite express provisions in the contract that allowed

13  termination by that method.  Id. at 651–52.  Here, similarly, defendants have denied coverage after

14  failing to communicate specific information to plaintiff.  It may be, in light of industry custom or

15  past interactions with defendants, that plaintiff was not justified in expecting defendants to provide

16  information about specific exclusions.  Defendants have not presented any evidence of relevant

17  industry custom and practice in connection with their motion.  As with plaintiff's implied contract

18  claim, however, the court will permit a renewed challenge to plaintiff's estoppel claim if and when

19  the parties produce sufficient evidence of industry custom to support a good faith motion for

20  summary judgment.

21          Defendants' motion for summary judgment on plaintiff's estoppel claim is therefore denied.

22

23  V.    *Quantum Meruit*

24          Under California law, a plaintiff can recover the reasonable value of services performed by

25  showing (1) that the plaintiff performed the services for the defendant; (2) that they were rendered at

26  defendant's request; and (3) that they are unpaid.  Haggerty v. Warner, 115 Cal. App. 2d 468, 475

27

28                                                    12

**United States District Court**

**For the Northern District of California**

1   (1953). Defendants allege two deficiencies in plaintiff's *quantum meruit* claim. First, defendants

2   argue that they did not derive a benefit from plaintiff's treatment of Mr. Donner. Second, defendants

3   claim that plaintiff has failed to show that it rendered the services at defendants' request.

4         Defendants' first argument misstates California law. In Earhart v. William Low Co., 25 Cal.

5   3d 503, 511 (1979), the California Supreme Court abrogated the common law requirement that there

6   be benefit to the defendant in a *quantum meruit* claim, noting "that performance of services at

7   another's behest may itself constitute 'benefit' such that an obligation to make restitution may arise."

8   Thus, the fact the Mr. Donner was the direct beneficiary of the medical treatment does not bar

9   plaintiff's claim.

10         Defendants' second argument—that defendants did not "request" treatment of Mr.

11   Donner—depends in large part on the interpretation of the six verification and authorization letters

12   that defendants provided. Defendants cite Cedars Sinai for the proposition that verification of

13   coverage is not the same as a request for treatment. The pre-treatment communications in this case,

14   however, are much more extensive than those in Cedars Sinai. Without evidence of industry custom,

15   the court is unable to conclude as a matter of law that the authorizations taken as a whole do not

16   amount to a "request" for treatment. Defendants' motion for summary judgment on plaintiff's

17   *quantum meruit* claim is therefore denied, subject to renewal as discussed supra.

18

19   VI.   Section 1371.8

20         The Knox-Keene Health Care Service Plan Act of 1975 ("Knox-Keene Act"), California

21   Health and Safety Code sections 1340–1399, was enacted to regulate health care service plans and

22   specialized health care service plan contracts in California. Cal. Health & Safety Code § 1343(a).

23   Plaintiff claims that defendants have violated section 1371.8 of the Knox-Keene Act, which provides

24   as follows:

25         A health care service plan that authorizes a specific type of treatment by a provider
          shall not rescind or modify this authorization after the provider renders the health care
26        service in good faith and pursuant to the authorization. This section shall not be

27

28                                                   13

United States District Court

For the Northern District of California

1    construed to expand or alter the benefits available to the enrollee or subscriber under a
2    plan.

Id.

3       In California Association of Health Plans v. Zingale, No. 00-06803, 2001 U.S. Dist. LEXIS
4
5    21497 (C.D. Cal. August 27, 2001), the court held that many of California's state law standards for
6    health care service plans, including section 1371.8, are preempted by section 1856(b)(3)(B) of the
7    Social Security Act, 42 U.S.C. section 1395w-26(b)(3)(B). Id. at *2–*3. Zingale is not controlling
8    authority for this court, and it is unclear from the very short opinion whether the preemption would
9    apply to the plan at issue in this case. This court therefore requested supplemental briefing from the
10   parties on the question of preemption.

11      In its supplemental brief, plaintiff asserts that since the instant action does not involve a
12   Medicare claim, it falls outside fo the Social Security Act's preemption clause. Defendants respond
13   that preemption is not dependent on whether the subject claim is a Medicare claim, but rather is
14   determined by whether the health care service plan participates in the Medicare program at all.
15   Defendants, however, do not explain whether they "participate in" the Medicare program, but instead
16   argue that they are not subject to the Knox-Keene Act because they are not a "health care service
17   plan[]" under the Act.

18      The Knox-Keene Act applies "to health care service plans and specialized health care service
19   plan contracts as defined in subdivisions (f) and (o) of Section 1345." Cal. Health & Safety Code
20   § 1343(a). Relevant to the instant action is section 1345(f), which defines a health care service plan
21   as follows:

22      (1) Any person who undertakes to arrange for the provision of health care services to
         subscribers or enrollees, or to pay for or to reimburse any part of the cost for those
23       services, in return for a prepaid or periodic charge paid by or on behalf of the
         subscribers or enrollees.

24      (2) Any person, whether located within or outside of this state, who solicits or
         contracts with a subscriber or enrollee in this state to pay for or reimburse any part of
25       the cost of, or who undertakes to arrange or arranges for, the provision of health care

26

27

28                                          14

United States District Court

For the Northern District of California

services that are to be provided wholly or in part in a foreign country in return for a prepaid or periodic charge paid by or on behalf of the subscriber or enrollee.

Id. § 1343(f).

Much of defendants' argument rests on their assertion that "health care service plan" is synonymous with "health maintenance organization" ("HMO"). Defendants claim that the they are not an HMO, but rather that Christian Brothers is an indemnity organization and Principal is an insurance company. See Defs.' Supplemental Brief at 3; Supplemental Declaration of Donna Phillips ¶ 3; Supplemental Declaration of Sherry Ferry ¶ 2. The Knox-Keene Act, however, expressly states that it may apply to insurers if they are "directly providing the health care service through. . .entity-owned or contracting health facilities and providers." Cal. Health & Safety Code § 1343(e)(1). California courts have found that the Knox-Keene Act applies to insurers as well as HMOs. See Palmer v. Superior Court, 103 Cal. App. 4th 953, 969 (2002) ("California law, in the Knox-Keene Act, requires a licensed health care service plan, such as an HMO or insurer, to adhere to certain standards in the utilization review context."); see also Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co., 809 F.2d 617, 622 (9th Cir. 1987) (observing that an entity may be "partly an insurer and partly a health care service plan . . . .").

Defendants provide a list of "at least five fundament[al] differences" between health care service plans and insurance companies, but fail to adequately apply these differences to their own businesses. For example, defendants cite Reynolds v. California Dental Service, 200 Cal. App. 3d 590 (1988), for the proposition that

> [t]he main difference between CDS [a health care service plan] and private insurance is that CDS provides subscribers with services in kind (i.e., CDS purchases dental services for its subscribers) whereas insurance companies operate on a fee-for-service basis (i.e., insurance companies indemnify the insured for the cost of dental services). Another difference is that CDS pays the dentist an agreed upon percentage of the dentist's actual charges while insurance companies calculate either according to a table of allowances for specific services or by a fixed percentage of what the insurer determines is the dentist's usual, customary and reasonable fee.

Reynolds, 200 Cal. App. 3d at 594. Defendants fail, however, to explain why, under Reynolds, they are not more like a health care service plan than an insurer. Defendant Christian Brothers provided a

15

United States District Court

For the Northern District of California

Preferred Provider Organization ("PPO") plan to Mr. Donner; the plan documents explain that PPOs are "arrangements whereby Hospitals, Physicians, and other providers are contracted to furnish, at negotiated costs, medical care for you and your Dependents." <u>See</u> Phillips Dec., Exh. A at 2.  It appears from the current record that defendants could be considered, at least in part, a health care service plan.  Accordingly the court finds that at this point defendants have failed to prove that they are not subject to the Knox-Keene Act.  Moreover, as defendants opted not to address the question of whether they are a "Medicare+Choice" plan, the court lacks a basis for deciding whether federal Social Security Act preempts application of section 1371.8 in this case.

Finally, defendants argue that plaintiff's section 1371.8 claim fails on the merits.  Defendants point to the last sentence of section 1371.8, which states that "[t]his section shall not be construed to expand or alter the benefits available to the enrollee or subscriber under a plan."  According to defendants, this sentence relieves them from the obligation to pay because Mr. Donner was ineligible for benefits due to his participation in criminal activity, and to require defendants to pay plaintiff would constitute an expansion of the benefits available under the plan.  Plaintiff responds that the final sentence refers only to the "benefits available to the enrolee" (i.e., Mr. Donner) and has no bearing on defendants' obligation to reimburse plaintiff.  The court agrees with plaintiff's interpretation, which is the more reasonable reading of the statutory language.  An enrollee such as Mr. Donner cannot use any payment made by defendants to plaintiff as evidence that his medical expenses were actually covered under the terms of the plan.  The plain language of section 1371.8, however, appears to require that payment be made to the "provider"—here, plaintiff.

Defendants' motion for summary judgment on plaintiff's claim under section 1371.8 is therefore denied.

16

CONCLUSION

For the above reasons the court hereby GRANTS defendants' motion for summary judgment in part and DENIES defendants' motion in part.  Specifically, the court GRANTS defendants' motion with respect to plaintiff's express contract and negligent misrepresentation claims.  The court DENIES defendants' motion with respect to plaintiff's implied contract, estoppel, *quantum meruit*, and section 1371.8 claims, subject to renewal if and when the factual record of relevant industry custom and practice establishes a good faith basis for granting summary judgment.

IT IS SO ORDERED.

Date: January 30, 2006

_____
MARILYN HALL PATEL
United States District Judge
Northern District of California

**United States District Court**

For the Northern District of California

17

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>ENDNOTES</u>

1. Unless otherwise noted, background facts reflect the consensus between plaintiff's and defendants' briefs and supporting declarations.